**COMMONWEALTH of Kentucky, TRANSPORTATION CABINET, DEPARTMENT OF HIGHWAYS, Appellant,**

v.

**Thomas BLACKBURN; Patricia Blackburn; and Lucille Blackburn, Appellees.**

No. 2008–CA–001455–MR.

Court of Appeals of Kentucky.

July 9, 2010.

Discretionary Review Denied by Supreme Court May 11, 2011.

Case Ordered Published by Supreme Court May 11, 2011.

Andrew M. Stephens, Lexington, KY, for appellant.

Lawrence R. Webster, Pikeville, KY, for appellees.

· Before ACREE, CAPERTON, and THOMPSON, Judges.

## OPINION

THOMPSON, Judge:

The Department of Highways of the Commonwealth of Kentucky Transportation Cabinet appeals from a judgment of the Pike Circuit Court reversing its decision regarding replacement housing payments. For the reasons stated herein, we affirm in part, reverse in part, and remand.

On February 15, 1996, Thomas and Patricia Blackburn, owners of Parcel No. 119 on U.S. Highway 119 in Pikeville, were notified by the Cabinet of its intention to take their property pursuant to the Kentucky Eminent Domain Act, KRS[1] 416.540.

1. Kentucky Revised Statutes (KRS).

On March 7, 1996, Lucille Blackburn, owner of Parcel No. 117, was notified that her property would be taken by eminent domain as well.

The Cabinet's letters stated that they were considered displaced persons and, thus, might be eligible for replacement housing payments. According to the letter, Thomas and Patricia were eligible for a payment of $11,500, and Lucille's letter provided that she would receive $15,000. These payments were based on the difference between the acquisition cost of the acquired dwelling (i.e., the present value of the property to be taken) and the cost to purchase a comparable replacement dwelling as provided in Section 19(5) of 600 KAR [2] 3:010.

During this same period, a civil action was ongoing regarding the determination of the ownership rights to the two parcels. After the resolution of this case, the Blackburns' ownership interests were reduced to an undivided, two-thirds interest in their respective parcels. The Cabinet then awarded the owners of Parcel No. 119 $70,000, of which $46,900 went to Thomas and Patricia. The owner of Parcel No. 117 received $75,000, of which $50,000 went to Lucille.

On January 25, 2000, the Cabinet notified the Blackburns that they would receive nothing for replacement housing payments. The Cabinet's letters stated that the replacement housing payments were being eliminated because they had received higher acquisition awards. These acquisition awards were higher than the costs of purchasing comparable dwellings for the Blackburns.

The Blackburns appealed these decisions regarding replacement housing payments to the Cabinet. The Blackburns argued that their replacement housing payments were miscalculated because their payments were not based on comparable housing prices appraised near the time of their acquisition settlement. However, the Cabinet disagreed with the Blackburns' claims and issued two orders finding that the Blackburns were not entitled to replacement housing payments.

On August 8, 2003, the Blackburns filed a petition for judicial review of the Cabinet's decision regarding their replacement housing payments. On December 22, 2006, an agreed order was entered submitting the case to the trial court for a decision. Subsequently, the trial court issued a judgment reversing the decision of the Cabinet. The trial court found that the Cabinet's use of dated comparable dwelling valuations was erroneous.

Additionally, the trial court found that Thomas and Patricia were entitled to $23,100 for replacement housing and incidental relocation expenses. The trial court found that the Cabinet correctly determined Lucille's award because "she purchased lower-priced, comparable housing." The trial court further found that the Blackburns' administrative appeal was filed within the sixty-day filing period. This appeal followed.[3]

 The Cabinet contends that the trial court erred by not dismissing the Blackburns' petition because it was outside the sixty-day filing period. Citing Section 31 of 600 KAR 3:010, the Cabinet contends that the Blackburns failed to appeal its decision within sixty days of February 15, 1996, the date of their award letter. The

---

2. Kentucky Administrative Regulations (KAR).

3. Because the trial court found that Lucille was not entitled to any award and she has not contended that the trial court erred, we will not address any matter related to her claim.

Cabinet contends that the trial court cannot deviate from the clear language of the regulation and, thus, must be reversed. We disagree.

When a trial court sits without a jury, its findings of fact will not be set aside unless they are clearly erroneous. *Sebastian–Voor Properties, LLC v. Lexington–Fayette Urban County Government*, 265 S.W.3d 190, 195 (Ky.2008). When factual findings are supported by substantial evidence, they will not be deemed clearly erroneous. *Eagle Cliff Resort, LLC v. KHBBJB, LLC*, 295 S.W.3d 850, 853 (Ky. App.2009). However, we review the trial court's application of law *de novo*. *Cummings v. Commonwealth*, 226 S.W.3d 62, 65 (Ky.2007).

Section 31 of 600 KAR 3:010, in pertinent part, provides the following:

(1) A person may file a written appeal and request for hearing with the Transportation Cabinet in any case in which the person believes that the cabinet has failed to properly determine:

(a) His eligibility; or

(b) The amount of the payment required under the provisions of this administrative regulation.

(2) The Transportation Cabinet shall consider a written appeal regardless of form.

(3) The appeal shall be filed within sixty (60) days of the date of his written notice from the Transportation Cabinet of the cabinet's determination on the person's claim.

In this case, the trial court found that the Cabinet issued a notification letter in 1996 informing the Blackburns that they were eligible for a replacement housing payment of $11,500. However, on January 25, 2000, the Cabinet issued a revised letter providing that the Blackburns would receive no replacement housing award. In interpreting the appeal provision, the trial court wrote the following:

if the right of appeal is meaningful under these regulations, the right of appeal should be preserved through the end of the Transportation Cabinet's transaction with [Thomas and Patricia].

Thus, because the parties' final settlement determines their entitlement to and the amount of the replacement housing payment, the trial court ruled that the sixty-day period must begin when the Blackburns were notified of their new (final) award, not when they were notified of their initial replacement housing payment eligibility in 1996.

After reviewing the record, we conclude that the trial court did not err by finding that the Blackburns filed their appeal within the sixty-day appeal period. Subsection three of Section 31 clearly states that the date of a property owner's written notice following the Cabinet's "determination on the person's claim" starts the clock on the running of the sixty-day period. Although the Cabinet disagrees with our interpretation, we are bound to apply the literal meaning of a regulation's terms. *Richardson v. Rees*, 283 S.W.3d 257, 263 (Ky.App.2009). The appeal period shall begin to run only on the date of the written notice for the *actual* award.

Furthermore, the fundamental purpose of providing notice is to permit a party with a meaningful opportunity to present any legal or factual claim they may have. *Conrad v. Lexington–Fayette Urban County Government*, 659 S.W.2d 190, 197 (Ky.1983). If we were to vindicate the Cabinet's legal argument, we would essentially be legalizing its ability to issue an initial award and then wait sixty days before issuing a revised and lower award without any possible right of appeal by an aggrieved property owner. This was not the intent of the legislature.

Accordingly, the Blackburns were permitted to appeal the January 25, 2000, final decision of the Cabinet denying them a replacement housing payment. On March 13, 2000, the Blackburns issued a letter to the Cabinet appealing the decision to deny them a replacement housing payment. Thus, the Blackburns perfected their appeal within the confines of Section 31(3) of 600 KAR 3:010.

The Cabinet next contends that the trial court erred by incorrectly determining the method by which replacement housing payments are calculated. The Cabinet contends that the trial court erred by precluding it from using the 1996 comparable housing valuation to determine a replacement housing payment.

In determining the appropriate replacement housing payment, Section 19(5) of 600 KAR 3:010 provides the following:

> If a single-family dwelling is owned by several persons, and occupied by only part of the owners, the replacement housing payment shall be the lesser of:
>
> (a) The difference between the owner-occupants' share of the acquisition cost of the acquired dwelling and the actual cost of the replacement dwelling; or
>
> (b) The difference between the total acquisition cost of the acquired dwelling and the amount determined by the Transportation Cabinet as necessary to purchase a comparable dwelling.

Further, Section 16(7) of 600 KAR 3:010 provides the following:

> (a) If the lapse of time between obtaining a listing of an available dwelling which is used to compute a replacement housing payment and the offer of the replacement housing payment amount to the displaced person exceeds thirty (30) days, the Transportation Cabinet shall determine that the property is still on the market.

> (b) If a check of the market reveals the comparable dwelling relied upon is not available, a new comparable dwelling shall be selected and a new replacement housing payment computed.

Finally, Section 16(8) of 600 KAR 3:010 provides that an adjustment must be made to the asking price of the selected comparable dwelling when the market changes by more than five percent in the asking price and the sale price of comparable housing in the area.

Based on these regulations, the legislature has created a scheme that seeks to fairly compensate landowners for their property. The Cabinet has an affirmative duty to ensure that the dwelling used to compute the replacement housing payment is still on the market within thirty days of the offer of the housing payment. Section 16(7)(a) of 600 KAR 3:010. If the dwelling is no longer on the market, a new replacement housing payment must be computed to ensure that a fair settlement is made. Section 16(7)(b) of 600 KAR 3:010. If the sale prices of comparable housing in the area fluctuate by more than five percent, the valuation of the selected comparable dwelling must be changed to reflect market prices.

The trial court ruled that "the Transportation Cabinet use the Section 19(5)(a) calculation," in determining the replacement housing payment for the Blackburns, "for the sake of expediency." Thus, the trial court took the difference between the Blackburns' share of the acquisition costs, $46,900, and the actual cost of their replacement dwelling, $60,000. The trial court further awarded the Blackburns' incidental expenses of $10,000 associated with their relocation. This resulted in a total award of $23,100.

Despite the trial court's ruling, Section 19(5) of 600 KAR 3:010 clearly provides the Cabinet with the authority to

determine the appropriate replacement housing payment using either of two methods delineated in the regulation. In reviewing administrative decisions, our courts have a deferential standard of review and cannot substitute our view for the judgment of the agency. *Louisville/Jefferson County Metro Government v. TDC Group, LLC.,* 283 S.W.3d 657, 663 (Ky. 2009). Accordingly, because the legislature provided the Cabinet with the choice of either of two methods of calculating the housing replacement payment, the trial court could not choose which calculation method to apply. *Id.*

■ Having reversed the trial court's decision regarding the calculation method used to determine the Blackburns' replacement housing payment, we further conclude that the Cabinet has not established that it followed Sections 16(7) and (8), despite the almost four-year gap between the 1996 comparable housing listing price and the 2000 replacement housing payment offering. The trial court correctly determined that a three-year-old valuation cannot be offered by the Cabinet without proof that the 1996 valuation reflects current market values.

For the foregoing reasons, the judgment of the Pike Circuit Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

ALL CONCUR.